Will the clerk please call the next case? 113-1274, Bethany S. v. Garza Counsel, you may proceed. Thank you, Mr. Court. Your Honor, Counsel, I'm Pat Anderson. I represent the appellant, Catherine Diaz. Issue here is whether the commission's finding of an independent intervening accident was against the manifest way of the evidence. In this case, that decision was against the manifest way of the evidence and is contrary to the law because the commission did not apply the Buffalo test articulated by this court in Dunkin' and Global Products and by our Supreme Court in International Harvester. In this case, we've got a 32-year-old woman with no prior history of back problems who sustains an unsputed fall and injury at work on February 7, 2014. She goes on to make consistent reports of her accident, undergoes medical treatment with her primary care doctor. Her physical examinations are consistently abnormal with pain, decreased range of motion. She consistently reports sharp pain in her lower back. Her doctors prescribe her medications and she's participating in physical therapy. This is consistent in the doctor's notes all the way up through March 10, 2014, just five days before this alleged independent intervening accident when she was ordered to continue physical therapy and had a month-long supply of her naproxen refilled. Now, on March 17, about a week after that visit, the petitioner returns to her primary care doctors and reports that a couple of days before that visit, she's picking up after her daughter, her young daughter. She bent down to pick up a box of her daughter's toys. She felt an increase or an upsurge in the back pain in the exact same area of her body that had been injured in the February 7th. Did this box allegedly weigh 20 pounds? How did that get into the record? Somebody testified that it was 20. I believe that was the petitioner's testimony. It may be in the doctor's note as well. About a 20-pound box of toys? Correct, yes. So she has the area, the upsurge in pain in the same area that she's been experiencing for the last month. Her doctor diagnoses her with a reflare of the original injury. Now, the respondent argues in the commission found that this lifting of her daughter's toys was a completely new independent intervening accident, which completely severed the causal connection between the original work injury and Ms. Diaz's condition at the time of trial. Who's Dr. Wehner? Dr. Wehner is the respondent's Section 12 examiner, Your Honor. He testified that the claimant was at MMI by the date of March 15, 2014, correct? She did. Well, it became relevant to the commission because they're saying, hey, she's reached MMI, she's okay. And then it was after that that this back injury occurred. Understood, Your Honor. But an expert's opinion has to be based on the evidence in the record. If it's inconsistent with the record and inconsistent with the law, it's improper and should be intricate or disregarded. Well, aside from all those conclusions, tell us why it's inconsistent with the evidence. Because even at the examination, even Dr. Wehner's records reflect that Ms. Diaz had symptoms of pain at her examination with her, and that was in June of 2014. So she continued to have these problems. Dr. Wehner wouldn't render the opinion whether or not Ms. Diaz had ever recovered, or at her deposition, she wouldn't testify whether Ms. Diaz had reached MMI prior to this alleged intervening accident, had no opinion that her condition had resolved, that the work accident symptoms had gone away, or that she was at a pre-accident condition before the alleged intervening accident. And so that opinion that she had reached MMI is inconsistent with all the records, inconsistent with the evidence, including the note from five days before where she's still getting a month-long supply of meds. On that, the allegation is totally inconsistent with the evidence. Dr. Pham, is that the claimant's treating physician? Correct, yes, Dr. Katz Pham. All right. Did Pham and Wehner agree on the diagnosis and agreed that a back strain such as that experienced by the claimant in February should resolve within four to six weeks? That's correct. That's true, Your Honor. And Dr. Katz Pham agreed to a general question about generally whether a bulging disc would resolve in that period of time or whether a back strain would resolve in that period of time. When she was asked whether this was just a back strain, she said, no, this claimant is having more problems than the normal course. And this is even before the alleged intervening accident. She said this was not taking the normal course. And when counsel says, is this just a back strain, I cross-examination, she said, no, it's a back strain in combination with the bulging disc and stenosis that I saw in that MRI on March 6th. Well, but the commission doesn't have to believe everything the claimant testifies to in any case, do they? Agreed, they don't. There's nothing inconsistent in the record with what the petitioner testified to and with what's in the record with her contemporaneous reports to her doctors. There's nothing to support the opinion that she was at an MMI, and there's nothing to support Dr. Weiner. Except Dr. Weiner saying that she was at MMI. Right, but Dr. Weiner's opinion simply saying that she was at MMI and that she should have been based on what the injury was I think is particularly disingenuous because when there was an orthopedic referral and a referral for additional treatment to investigate what more may have been going on, that was denied and she was refused the opportunity for that treatment. So you can't say that this was simply a back strain because, first of all, it lasted more than the normal course. So either it's a back strain that's more severe than the normal course, or there's something more going on than a back strain because she's continued to have these problems. And at her deposition, Dr. Weiner agreed that she had no opinion that this claimant had reached MMI or had stabilized or had gone back to her pre-accident condition before this alleged intervening accident. So her opinions in that regard are inconsistent, and her opinions as far as MMI are inconsistent as well. Dr. Weiner did in her report for deposition say the words intervening accident with respect to this toy lifting incident, but her interpretation of an intervening accident is not consistent with the interpretation of Illinois courts as to what's required to find an independent intervening accident occurred, such that causal connection is broken. Here, for an intervening accident to occur, it must completely break the causal connection so that the original injury is not a factor at all in the later condition. So logically, for this to have been a new injury on March 15th, the old injury would have had to resolve first. And Dr. Weiner had no opinion to that effect, and all the evidence is to the contrary. Dr. Weiner didn't have any opinion as to whether this same toy lifting incident would have caused Ms. Diaz the same pain in the same location absent the original work injury. And without that basis, her opinion as to an intervening accident is flawed and inconsistent with the law. So regardless of what Dr. Weiner's opinion is, the commission clearly failed to apply the but-for test that is required by Dunkman and Global Products and National Freight. Now, common sense in our experience tells us that when people start to feel better after an injury, they'll return to their normal activities, and it's common for people to have a setback or a reflare when they resume those normal activities. That's illogical to conclude that when that happens, that the original injury was not a factor in causing the reflare. And that's exactly what happened here. The but-for relationship between the original work accident and the claimant's condition at the time of the hearing, regardless of whether the toy lifting contributed along with it, contributed to the claimant's condition at the time of trial. But for the original injury, there would have been nothing to reflare or aggravate when she went and bent down to do normal household activity, an activity that she presumably done hundreds of times before. Given that she had a small child before the work accident, she had no problems doing that activity. Respondent's brief, the employer's brief argues repeatedly that it's an intervening accident because the petitioner's symptoms increased or changed after the accident, or after the intervening accident. But the fact that a claimant's condition may have worsened is not enough for the respondent to avoid liability. So the VOGAL stands for the proposition that whether or not other incidents that were related or not have aggravated the claimant's condition is irrelevant. So proper question is not whether the severity of the pain complaints changed or worsened, but rather whether her condition subsequent to the toy lifting reflare in March was completely unrelated to her work accident. So whether or not she had radiating pain before the accident or after the accident is irrelevant because the body part of the issue is exactly the same. She had the exact same pain in the exact same body part that she had suffered in the work injury and pain that she had never had in that area of her body before the accident. So in that context, it can be said that the work accident is not a causative factor in the petitioner's condition at the time of hearing because simply more pain in the same location does not constitute an intervening cause. Additionally, the argument that this is just a backstrain, this is merely a backstrain, has been repeated throughout the briefs. But first of all, as I alluded to, that's debatable given the fact that an investigation was thwarted by the respondent's refusal to authorize any treatment. But that's irrelevant in any event. Even if it's just a backstrain, it was a backstrain that hadn't resolved prior to the toy lifting reflare. So either it was a backstrain that hadn't completely resolved or it was something more than a backstrain. But either way, the toy lifting did not completely break the causal chain between the original work accident and the claimant's condition at the time of the hearing. So regardless of what the condition is, the guiding principles of the cases are the same. Inductment in the original injury was a blister, which didn't require any surgery or anything until the alleged intervening accident, which was the petitioner landing that blister. So that condition got worsened. Similarly, Mendota, the Mendota Township case, the claimant was originally diagnosed with a lumbar strain and then had a sneezing incident, which caused a ruptured disc, and he went on to have surgery. So again, the severity of the injury doesn't distinguish these cases. I want to talk briefly about the penalties issue because here, when the time the benefits were terminated, May 28, 2014, the petitioner's benefits were terminated. At that time, the only evidence in the record was Dr. Katz-Pham's opinion. This was a, quote, re-flare of the original injury. Dr. Wainer's examination and initial report doesn't take place until nearly three weeks after the petitioner's already cut off, June 16, 2014. In that initial report, even though counsel asked for an opinion about intervening accidents, saying we do question whether Diaz's ongoing treatment after the toileting incident may have served in an intervening accident, Dr. Wainer's report still didn't contain that opinion. Counsel again on June 23, 2014, sent another letter to Dr. Wainer, again asking whether the toileting thing represented a new intervening injury to her lower back. So now here we are almost a month after she's been cut off, and there's no opinion that even arguably supports terminating benefits. Counsel sends a third letter to Dr. Wainer on July 8, now almost six weeks after we've been cut off, and another letter again requesting the opinion regarding the toileting. It's only then, July 10, over six weeks after they had already made the decision to cut the petitioner off, that respondent had the opinion that it was looking for to arguably justify that decision. That's not how the comp system is supposed to work. An employer can't be allowed to first terminate a claimant's benefits and then subsequently seek out a medical expert opinion to support that decision. You need to have a medical justification for terminating benefits before doing so. Counsel, let me ask you this. You cited the – as part of the independent intervening cause analysis, the phrase that's used sometimes that the injury or disability is based upon a finding that the employee's condition was caused by an event that would not have occurred but for the original injury. Right. So how does that specifically apply to this case with the toy box? How does the but for? In this case, the petitioner had a young daughter, and she testified that she regularly cleaned up before her, doing things of this very nature regularly without incident before numerous times, probably hundreds of times. And she did it without incident, before the work accident. Now, after she has this work accident to the area of her low back, she goes back to doing this activity that she had done many times before. And without that injury, but for the work injury, her condition wouldn't have been – she wouldn't have been at stake, and she wouldn't have suffered the aggravation doing a normal household activity or any flare doing a normal household activity. Somebody picking up a 20-pound box, perhaps in an awkward position, putting a spring in her back. First of all, there's no evidence that she did it in an awkward position. But even if she did aggravate the spring in her back, the evidence is that the previous spring hadn't resolved, and the but for test is compliant with and consistent with the case. Except for Dr. Wainer. And you say your answer to that argument is that his evidence – or his testimony was inconsistent with the other evidence, right? In addition – but in addition, her testimony as to independent accident – or intervening accident is inconsistent with the Illinois laws interpretation as intervening accident. Because she won't run with the opinion – she has no opinion that the claimant's condition had resolved, that the claimant's condition had reached MMI, or that the claimant's condition had gone back to its pre-work accident state. Wait a minute. I don't want to parse words with you, but didn't you just concede earlier that Dr. Wainer testified specifically that the claimant was at MMI by the date of March 15, 2014? She didn't testify to that? At her deposition, she said she had no idea whether she was at MMI before the work accident, before the intervening accident. All right. So how did that get in the record? It's in her report, which was submitted – Okay. So her report says that, right? Her report says that, yes, that she was at MMI. Well, there is some evidence, isn't there? So I'm just not going to fall with the report and the inconsistencies with that opinion. And first of all, the evidence in this case and the case law that's applicable here. Okay. Isn't your argument on penalties contingent upon your argument on causation? No. Not necessarily, because when the petitioner was originally cut off, there was no Section 12 exam. When she was cut off, Section 12 didn't take place. You only get penalties if you fail to pay compensation that you're liable to pay. If there's no causation, if the commission files no causation, there's absolutely no basis for penalties, even if they did cut her off before they had an opinion to that effect. The basis for the commission's decision is the intervening accident. They had no opinion as to the intervening accident until six weeks after this. But I think you're losing sight of the fact that penalties are only awarded if there's an unreasonable or vexatious delay of payments by one liable to pay the compensation. If there's no causal relationship between the current condition of ill-being and the industrial accident, then there can never be any penalties, regardless of when they stopped paying or didn't pay. Understood. All of the evidence up until Dr. Wainer's report, up until that time, supported causal connection. The only evidence was that this is a reflare of the original injury. But you're not listening to my question. Isn't your penalty argument contingent upon your causation argument? If there's no causation, there cannot be any penalties, unless, of course, they failed to pay some type of compensation that was actually owed up until the point of time of the intervening accident. But the court found causal connection up through the intervening accident, so causal connection was obvious and apparently supported by the record. So the argument as to causal connection only comes into play at the intervening accident when the commission cut off the benefits. That's correct. Up until that time, there was no basis in the record for terminating benefits until there was an opinion from Dr. Wainer, which did not occur until long after the benefits were already terminated. When were they terminated vis-a-vis the intervening accident? The alleged intervening accident occurred on March, around March 15th. The benefits were terminated May 28th. If the causation for the current condition of ill-being doesn't exist because of an intervening event, then you are not entitled to any penalties for failure to pay benefits from the date of the intervening event on. Now, you say that the event occurred on March 5th, but they never cut off the payments until May. So if they're not liable for the condition after March the 5th, they can't possibly be liable for any penalties after that date. Well, and I articulated my position is that when they cut it off, they had no medical basis. Counsel, you are losing sight of the fact that if there's no causal connection, there cannot be penalties. I don't see how you can argue that position. I'm not arguing that position, but I'm arguing that causal connection was not an issue at all. It was an undisputed accident. They were paying until the time of Dr. Wainer's death. But who decides whether there was or was not causation? The commission. Is that correct? Yes. The commission decided that post-March the 15th, there was no causal connection between her condition of ill-being and her accident. Understood. Okay. Was she entitled to any benefits after March the 15th based solely upon the original action, if we accept the commission's finding that there was a superseding intervening cause on March the 15th? If we accept that finding, no. Okay. Then we've made some progress. And in that event, they couldn't possibly be liable for any penalties after that date, could they? Correct. Okay. That's good. Okay. Thank you. Counsel, you will have time to reply. Okay. Thank you, Your Honor. Counsel, you may respond. Good morning, Justices. Patrick G. Jesse, on behalf of the respondent, Kelly Dawgan Suds. Counsel, may it please the Court. I'm going to try and be concise here. I think this case really boils down to we have one expert saying this was not an aggravation. We have another expert saying that it was. Dr. Katzfam says it's a reflare. Wainer says it isn't. She reached MMI by this date. The commission rejected Dr. Katzfam's opinions. It's in their – Did they give reasons? Did they articulate reasons for rejecting? They did not give specific reasons in the rather short opinion. Would I have liked them to have given more depth in every decision I get? Sure. It would make my life easier. But it's clear from the record that they found her to be conjecturing and non-progative. One, she's a primary care physician. She's not treating lumbar spine injuries. She's not doing spinal surgeries. Dr. Wainer is. She's an orthopedic spine surgeon. So right off the bat, I think you're going to afford more weight to that expert's opinion as opposed to a primary care provider. Two, I think it boils down to the fact that these exams, these objective exams of petitioner up until this independent interview event, relatively normal. I mean, if you look at the last date that she sees Pnarker, which is the other primary care provider that she sees at this facility, all she's got is minimal L3, L4 tenderness. Wainer also looks at the MRI report. I believe Katz Pham also just reviewed the MRI report, but I might be wrong about that. But Wainer says, there's really nothing going on here. So the commission took her opinion and said, we're going to afford more weight to this. We're going to adopt her opinion over the opinion of an internist. Which they can do. Sorry? Which they can do, right? Which we know they do. That's their job, is to resolve the conflicts in the evidence. And that's exactly what they did in this case. They simply weighed the doctor's opinions, found that she was at MMI prior to the March 7th, March 15th incident, and that's a causation. In my opinion, that is the whole case in a nutshell at that point. It's a battle of the experts. Who's more credible? They found her to be credible. We're not here to substitute judgment, re-weigh the evidence. And I'll just leave it at that. Very good. If you have any questions. I don't believe there are. Thank you, counsel. Thank you. Counsel, you may reply. Yes, Your Honor. I think the record reveals, the record shows what the symptoms were on the 10th. And the physical exam is a little more than just some tenderness. She's got a sharp pain in her back, aggravated by moving, twisting, flexing. She's got decreased range of motion. She has pain on motion. So, in any event, she did have those symptoms. And as I alluded to earlier, whether those symptoms worsened or changed is irrelevant to the intervening cause analysis. In addition, this isn't just a battle of the experts, where the commission chose one over the other. As I alluded to earlier, Stock and Maynard can't say that this condition healed or got better, or what state petitioner was in before she had this reflare. It's inconsistent to then say that this is a brand new injury that's completely unrelated to the old one. So, the commission can't accept an opinion that has no basis in the record or in the evidence. And the commission can't accept an opinion that's inconsistent with Illinois law. And that's what Dr. Whitehurst's opinions are. And that's the only even arguable evidence that this is an independent intervening accident. And with that, thank you, Your Honor, for your time. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement. The written disposition shall issue. Will the clerk please call the next case. One, two, three. One, two, three. One, two, three. One, two, three. Should I come out of the way? Why don't you? Well, sorry about that. We'll not be called right away. We'll take a brief recess.